ELDON P. FORET, JR.                                CIVIL ACTION

VERSUS                                             NO: 13-5111

ST. JUNE, LLC                                      SECTION: J(2)

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 22)**[1] filed by Defendant, St. June, LLC ("Defendant"), as well as an *Opposition* **(Rec. Doc. 23)** by Plaintiff, Eldon P. Foret, Jr. ("Plaintiff"). Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **GRANTED.**

## PROCEDURAL AND FACTUAL BACKGROUND

This claim derives from alleged injuries Plaintiff sustained in his capacity as captain of a shrimp boat owned by Defendant. Plaintiff contends that on January 11, 2011, while he was employed as the captain of the M/V St. June,[2] the lights in the vessel malfunctioned. As Plaintiff was descending the stairs to

---

[1] Defendant labels its motion as a Motion for Summary Judgment, however because Defendant is seeking dismissal of only Plaintiff's claim for maintenance and cure, and not his claims for compensatory or punitive damages, the Court will construe this as a Partial Motion for Summary Judgment.

[2] While Plaintiff refers to the vessel as the "M/V St. June" in its pleadings, Defendant continuously references it as the "F/V St. June." For the purpose of simplicity, the Court will refer to the vessel as the M/V St. June.

1

investigate the matter in the engine room, a wave hit the vessel, and because there were no handrails on the stairwell for Plaintiff to grab onto, he alleges that he fell down the stairs, injuring his back and neck. (Rec. Doc. 1, p. 2). There were no witnesses to the incident. (Rec. Doc. 22, p. 3).

On July 18, 2013, Plaintiff filed suit against Defendant under the Jones Act, claiming that Defendant's negligence in "failing to furnish complainant a safe place to work" proximately caused Plaintiff's injuries. (Rec. Doc. 1, p. 2). Plaintiff seeks four million dollars in damages for the "serious, disabling and permanent injury to his back and neck" allegedly sustained as a result of his fall. (Rec. Doc. 1, p. 2 ) Plaintiff also seeks additional damages for maintenance and cure to which he asserts he is entitled under General Maritime Law, as well as punitive damages. (Rec. Doc. 1, p. 2-3). Defendant argues it was not negligent, and instead, that Plaintiff's injuries were the result of his own fault and neglect. (Rec. Doc. 5, p. 2).

Defendant filed a counterclaim against Plaintiff on May 14, 2014, seeking reimbursement of all sums it may be required to pay to Plaintiff for purposes of maintenance and cure, as well as recovery of all expenses incurred in defending the main claim. (Rec. Doc. 15, p. 3). At the time that Plaintiff was hired, during an interview with the owner of the M/V St. June, Russell Portier, Plaintiff alleges that he voluntarily told Mr. Portier that he had

neck and shoulder surgery two years prior to the interview, but that he had since "healed." (Rec. Doc. 22, p. 2). However, Defendant points out that Plaintiff "did not disclose that he had been experiencing chronic neck and low back pain since 1986," or "that he was under doctor's care for his neck and back pain" at the time of the interview. (Rec. Doc. 15, p. 1). Defendant contends that this intentional failure to disclose facts material to Defendant's decision to hire Plaintiff, as well as Plaintiff's decision to place himself in a work environment he was well aware could cause him "injury or re-injury," makes him "guilty of negligence in causing his own injury." (Rec. Doc. 15, p. 2-3). Additionally, because of Plaintiff's intentional misrepresentation regarding the existence and extent of his pre-existing injuries, Defendant claims that in accordance with the ruling in *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968), Plaintiff is precluded from recovering damages for maintenance and cure.

Defendant then filed the instant motion for summary judgment on August 26, 2014, arguing that there is no genuine issue that Defendant is not required to pay Plaintiff maintenance and cure in accordance with *McCorpen* and seeking to have Plaintiff's claims for maintenance and cure dismissed.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the

3

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *See also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in

favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

**DISCUSSION**

An employer owes damages for maintenance and cure to any seaman who suffers injury during his employment on a vessel, regardless of fault. *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (quoting *Bertam v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1012 (5th Cir. 1994)). This obligation terminates only when the employee has reached the "point of maximum medical cure." *Green v. Florida Marine Transporters, Inc.*, No. 10-1978, 201 WL 2293138 at *1 (E.D. La. June 8, 2011) (Zainey, J.). However, the Fifth Circuit has held that an employer is relieved of its obligation to pay maintenance and cure when the plaintiff seaman "knowingly or fraudulently conceals his [pre-existing] illness from

5

the shipowner." *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir.1968). To establish the *McCorpen* defense, an employer must show that (1) the seaman intentionally misrepresented or concealed medical facts; (2) the nondisclosed facts were material to the employer's decision to hire the seaman; and (3) a causal link exists between the withheld information and the injury that is the subject of the complaint. *Id.* at 548–49.

Defendant argues that it has met all of the *McCorpen* factors because Plaintiff misrepresented the fact that he was suffering from pre-existing back and neck injuries at the time he was hired by Defendant. Furthermore, Defendant contends that information regarding the existence and extent of these injuries was material to Defendant's decision to hire Plaintiff, and that Plaintiff's presently alleged injuries are substantially the same as his pre-existing injuries. (Rec. Doc. 22-1, p. 1).

In response, Plaintiff argues that the *McCorpen* defense is not applicable to his claim because he was never expressly asked by Defendant to disclose information regarding his pre-existing back and neck injuries. (Rec. Doc. 23-2, p. 4-5). Moreover, Plaintiff contends that because Defendant never requested a medical examination or questionnaire, information regarding these pre-existing injuries was not material to its decision to hire Plaintiff. (Rec. Doc. 23-2, p. 5-6). Finally, Plaintiff asserts that the injuries he sustained from the alleged fall onboard

Defendant's vessel are entirely different from those pre-existing at the time of the accident. (Rec. Doc. 23-2, 6).

A. Intentional Misrepresentation or Concealment

In *McCorpen*, the Fifth Circuit recognized a distinction in the standard for intentional concealment depending on whether the employer expressly requests a pre-employment examination or interview. *McCorpen*, 396 F.2d at 548. The Court first recognized that in cases in which an employer has not required a medical examination or interview, "the rule is that a seaman must disclose a past illness or injury only when in his own opinion the shipowner would have considered it a matter of importance." *Id.* at 548-49. However, "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *Id.* at 549. Moreover, the element of intentional concealment of medical facts "does not require a finding of subjective intent." *Id.*

Defendant argues that Plaintiff fraudulently concealed the extent of his pre-existing back and neck injuries, consistent with the standard supplied by *McCorpen*. Defendant argues that although it did not require Plaintiff to submit to a medical examination or medical interview, because Plaintiff was aware his medical condition was a matter of importance to Defendant and other

7

employers, he had a duty to disclose his pre-existing conditions to Defendant at the time of his meeting with Mr. Portier. (Rec. Doc. 22-1, p. 5). Plaintiff argues, however, that he never concealed his medical history; instead, he willingly "volunteered" information about his past surgery, informing Mr. Portier that he had "been through a neck surgery and shoulder surgery two years prior and I was healed." (Rec. Doc. 22, p. 2). Plaintiff further asserts that he should not be found liable for concealment when Mr. Portier failed to question him further regarding his previous surgeries and injuries. (Rec. Doc. 23-3, p. 4-5).

The Court finds that no genuine issue exists as to the fact that Plaintiff concealed his past injuries from Defendant, who would have found them of material importance. This Court has recognized that in determining whether a seaman is of the opinion that elements of his medical history are considered material by his employer, consideration should be given to his employment history. *See Kathryn Rae Towing, Inc. v. Buras*, No. 11-2936, 2013 WL 85210 at *4 (E.D. La. Jan. 7, 2013) (Vance, J.). In *Buras*, despite the fact that the plaintiff seaman's employer failed to request a medical examination or questionnaire, the Court found that the plaintiff should have known that information regarding his recent back surgery and a history of back injuries would have been material and "plainly desired" by the employer. *Id.* Like in *Buras*, Plaintiff has extensive experience in the boating industry and "has

8

worked on shrimp boats for 42 years since he was fourteen years old." (Rec. Doc. 23-1). As such, Plaintiff should be familiar with expectations of potential employers regarding the disclosure of past medical history. Plaintiff noted in his deposition that several boating companies as well as "every oilfield company he ever worked for" has asked him "if he ever had any injuries or medical problems with his neck and back." (Rec. Doc. 22-1, p. 5-6). Plaintiff was evidently aware that Defendant would be interested in learning of his pre-existing back and neck injuries, even if Mr. Portier failed to specifically ask about them during the employment interview.

Plaintiff contends that he did not conceal information regarding his pre-existing injuries because he voluntarily informed Mr. Portier that he had previously had neck and shoulder surgery. However, while choosing to disclose this narrow piece of information, Plaintiff remained silent regarding his pre-existing back injuries.[3] More importantly, Plaintiff admits that he told Mr. Portier that he was "healed" at the time of the interview, which is entirely inconsistent with Plaintiff's medical history. Plaintiff's medical records indicate that on July 24, 2012, mere weeks before

---

[3] Contrary to Plaintiff's assertion that his deposition indicates he revealed to Mr. Portier that he was taking pain medication at the time of the interview, the facts provided do not support this. (Rec. Doc. 23-2, p. 4). In his deposition, Plaintiff admits to taking pain medicine at the time he was hired, but not to informing Mr. Portier of this fact. The only information Plaintiff admits to providing Mr. Portier with regarding his pre-existing injuries was the surgery on his neck and shoulder he underwent two years prior to the interview. (Rec. Doc. 23, Ex. A, p. 43-44).

9

Plaintiff's meeting with Mr. Portier, Plaintiff consulted Dr. Charles Billings, an Orthopedic Surgeon at Tulane Medical Center in New Orleans, Louisiana, complaining of "neck, back, and right shoulder pain," as well as "left shoulder pain" sustained from falling off a ladder, for which the doctor noted he "may need surgery." (Rec. Doc. 22, p. 13). This evidence clearly indicates that Plaintiff was not "healed," as he indicated to Mr. Portier, but rather that he was still suffering extensive pain in his neck, back, and shoulders at the time that he applied to captain the R/V St. June. Because Defendant has shown that Plaintiff knew that the disclosure of his pre-existing back and neck injuries was "plainly desired" by Defendant and intentionally concealed and misrepresented the existence and extent of these injuries, Defendant has met the first element of the *McCorpen* defense.

**B. Materiality**

In order for the *McCorpen* defense to apply, the concealed or nondisclosed facts of Plaintiff's medical history must be material to Defendant's decision to hire Plaintiff. *See Brown v. Parker Drilling Offshore, Corp.*, 410 F.3d 166, 171 (5th Cir. 2005). The Fifth Circuit has routinely held that the existence of a plaintiff seaman's back injury is material to a decision of employment, going so far as to say that a plaintiff's "history of back injuries is the exact type of information sought by employers." *Id.* at 174; *See also Jauch v. Nautical Services, Inc.*, 470 F.3d, 207, 212-13 (5th

Cir. 2006). In *Jauch*, the Fifth Circuit again held that "past instances of back injury, some severe enough to require extensive treatment, are certainly facts material" to an employer's decision to hire a seaman. *Jauch*, 470 F.3d at 213. Plaintiff's pre-existing injuries to his back and neck are clearly extreme and extensive, and it is apparent that the concealment of facts regarding these injuries was material to Defendant's decision to hire Plaintiff. Plaintiff, himself, recognized that the existence of such injuries was an important factor considered by his previous employers in determining whether to hire him. (Rec. Doc. 22-1, p. 5-6). Plaintiff's argument that his pre-existing injuries were not material because Mr. Portier failed to specifically ask about them or require him to undergo a medical evaluation is not persuasive. This court has held that a plaintiff's past medical history is material to an employment decision even when no medical evaluation is required of the plaintiff and even when the plaintiff is not required to answer questions about his physical condition or history. *Kathryn Rae Towing*, 2013 WL 85210 at *4. Thus, Defendant has proven that Plaintiff's medical history was material to its decision to hire Plaintiff.

**C. Similarity of Injuries**

The Fifth Circuit has held that a party seeking to employ a *McCorpen* defense is not required to show that the plaintiff's pre-existing injuries were the sole cause of the present injury

11

claimed. *Brown*, 410 F.3d at 176. Instead, "All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *McCorpen*, 396 F.2d at 549. Defendant asserts that this element has undoubtedly been met because Plaintiff's pre-existing injuries and those he alleges he incurred onboard the M/V St. June are "identical," in that they both concern Plaintiff's neck and lower back. (Rec. Doc. 22-1, p. 2). Plaintiff, however, contests the similarity of his present injuries to his pre-existing injuries, contending instead that the "back pain he experienced after the accident was different, much worse, and that his right leg became weaker." (Rec. Doc. 23, p. 6).

The Court is not persuaded by the several cases cited by Plaintiff in support of its argument that no causal link exists between Plaintiff's present and pre-existing back and neck injuries.[4] This Court has routinely found sufficient causal links between pre-existing injuries and those incurred during employment when these injuries arise in generally the same area of the body. For instance, in *Brown*, as cited by the Defendant, the Fifth

---

[4] Plaintiff first cites the case of *Paes v. Rowan Companies* in support of his argument that Judge Barbier has denied motions for summary judgment in cases in which the *McCorpen* defense has been raised based on the lack of a causal link between injuries. However, contrary to Plaintiff's allegations, the ruling in this cited case was made by Judge Africk, in a very brief order in which no reasoning was given for his denial of summary judgment. Additionally, the cited case of *Brown v. Parker Drilling Offshore Corp.* contains merely a footnote mentioning other cases in which motions for summary judgment have been denied, constituting dicta. *Brown*, 410 F.3d at 189, n.9. The Fifth Circuit in *Brown* ultimately granted the Defendant's motion, finding the causal link had been satisfied, as discussed above.

Circuit found a sufficient causal connection between a pre-existing lumbar strain and a herniated disk incurred during employment located in "the same lumbar-spine region" as his pre-existing condition. *Brown*, 410, F.3d at 176. Moreover, this Court has held that when both a plaintiff's prior injuries and present injuries concern the lower back, the causal link has been met and summary judgment on the issue of the *McCorpen* defense is appropriate. *Weatherford v. Nabors Offshore Corp.*, No. 03-0478, 2004 WL 414948 at *3 (E.D. La. Mar. 3, 2004) (Duval, J.); *Keys v. Haliburton Co.*, No. 88-1523, 1989 WL 54224 at *4 (E.D. La. May 17, 1989) (Livaudais, J.).

Plaintiff alleges in his complaint that as a result of his fall aboard the M/V St. June he suffered "serious, disabling and permanent injury to his back and neck." (Rec. Doc. 1, p. 2). More specifically, in his answer to Defendant's counterclaim, Plaintiff admits that he injured "his cervical and lumbar spine" during his alleged fall. (Rec. Doc. 16, p. 1). Defendant has provided the Court with Plaintiff's extensive past medical history in which he consulted a multitude of doctors since 1986 seeking relief for "excruciating" pain in his back and neck. One of the many examples provided shows that as early as August 29, 2003, Plaintiff was diagnosed as having "total and permanent spine disability lumbar and cervical." (Rec. Doc. 22, p. 8). Furthermore, on September 14, 2012, a month after Plaintiff was hired by Defendant, he consulted

Dr. Michael Haydel of the Haydel Spine and Pain Clinic in Houma, Louisiana, complaining of "neck and back pain . . . numbness, stabbing, throbbing, tingling, burning shooting [and] cramping pain . . . ." (Rec. Doc. 22, p. 14). On January 17, 2013, six days after he allegedly fell, Plaintiff returned to Dr. Haydel, again complaining of "excruciating neck and back pain," never once mentioning to Dr. Haydel that he had fallen or experienced any accident which would have exacerbated this pain. (Rec. Doc. 22, p. 14). Plaintiff's pre-existing and present injuries involve the same area of the body, the neck and the lower back (specifically the lumbar area), and the mere fact that Plaintiff also claims "weakness" in his right leg, does not defeat any causal link.[5] Based on the identical nature of the injuries complained of before and after the alleged fall on January 11, 2013, the Court finds there exists a causal link between Plaintiff's pre-existing and present injuries.

Because Defendant has satisfied all three elements of the *McCorpen* defense, Plaintiff's claim for maintenance and cure should be dismissed.

---

[5] As seen in his medical history, Plaintiff has also previously suffered from injury to his right leg. In a visit to the South Louisiana Medical Center in Houma, Louisiana on January 10, 2009, Plaintiff complained that his lower back pain was so extreme so as to "radiate down [his] right leg." (Rec. Doc. 22, p. 4). Again in December 22, 2011, during an appointment at the Southeast Neuroscience Center in Houma, Louisiana, Plaintiff notified his doctor that his lower back pain caused "pain down [his] right leg and numbness." (Rec. Doc. 22, p. 13). The Court finds that this description of his past leg pain presents a sufficient "causal link" to his present complaint of weakness in his right leg.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 22)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claim against Defendant for maintenance and cure be dismissed **WITH PREJUDICE**.

New Orleans, Louisiana this 11th Day of September, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE